IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL NATIONAL MORTGAGE    :
ASSOCIATION, a/k/a Fannie Mae,    :
  :
    Plaintiff,    :
  :
v.    :
  :
TERI PROWANT and TAMARA    :    CIVIL ACTION NO.
MITCHELL-JOHNSON,    :    1:14-CV-3799-AT
  :
    Defendants.    :

## **ORDER**

This declaratory judgment action is before the Court on the Parties'
respective Motions for Summary Judgment.  Plaintiff Federal National Mortgage
Association's ("Fannie Mae") initially filed its Complaint, (Doc. 1), seeking a
declaration from the Court that its dispute resolution policy ("DRP") did not
permit Defendants, prior employees of Fannie Mae, to arbitrate their claims as a
class.  Fannie Mae also sought a declaration that only the Court (and not an
arbitrator) could decide whether the DRP permitted class arbitration, as well as
an injunction preventing Defendants from arbitrating their underlying claims as
a class.

The underlying claims were brought by Defendants under the Fair Labor
Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), in an arbitral forum.  Fannie
Mae, the respondent in arbitration, abruptly filed this declaratory judgment

action and became the Plaintiff in federal court — while the arbitrator was deciding the very clause construction issue Fannie Mae asked the Court to decide. Fannie Mae then obtained a stipulation from the individual Defendants that this Court could decide all issues of arbitrability, and specifically the availability of class claims ("class availability")[1], but that stipulation also reserved Defendants' right to object to and challenge Plaintiff's resort to the Court for this purpose instead of proceeding with the arbitration hearing. (Doc. 11-5 at 3.)[2] Plaintiff's Motion for Summary Judgment [Doc. 11] currently before the Court seeks only a declaration that the DRP does not permit class claims and an injunction preventing Defendants from asserting any.

After Plaintiff moved for summary judgment, Defendants filed three counterclaims, two of which claim that Plaintiff's court filing rendered the DRP unenforceable.[3] Each of those two counterclaims also raised issues that were substantially similar to issues raised by Defendants in their response to Plaintiff's Motion for Summary Judgment. As any order on Plaintiff's Motion for Summary

---

[1] Whether class availability is a threshold question of arbitrability or merely a gateway procedural issue has not been decided in this Circuit and is not now before this Court for reasons explained herein. *See S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1358, n.6 (11th Cir. 2013) (noting that, like the United States Supreme Court, the Eleventh Circuit has "not decided whether the availability of class arbitration is a question of arbitrability.").

[2] Pin cites to the record in this Order refer to the blue numbers in the header attached by the Clerk of Court for the Northern District of Georgia, not the page numbers that potentially appear at the bottom of each document.

[3] Defendants' third counterclaim is conditional and alleges the same FLSA claims that were the subject of the underlying arbitration. (Ans. and Counterclaim at 12 ¶ 13 ("If the Court determines that Plaintiff waived arbitration by inconsistent litigation conduct, breached the arbitration agreement by filing this action, and/or rescinds the DRP such that the duty to arbitrate no longer applies to Defendants, Defendants hereby allege in this Court action the claims alleged in their Demand for Arbitration in the JAMS Arbitration Ref. No. 1440004125.").)

Judgment would likely address those issues, the Court directed Defendants to file their own Motion for Summary Judgment [Doc. 37] on the two counterclaims (1 and 2).[4]  For the following reasons, Plaintiff's Motion for Summary Judgment [Doc. 11] is **DENIED** and Defendants' Motion for Summary Judgment [Doc. 37] is **GRANTED**.

## I.   LEGAL STANDARD

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law.  *Id.*  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party.  *Id.* at 249.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor.  *See Reeves v. Sanderson Plumbing*

---

[4] To be clear, after the counterclaims were filed, the Court sought only to adjudicate all gateway arbitration issues at the same time if the parties believed simultaneous disposition was appropriate.  Thus, when the Court directed summary judgment briefing on Defendants' counterclaims, it noted, "If the parties believe the counterclaims can be put before the Court through any other mechanism, *e.g.*, a motion for judgment on the pleadings, they should contact Amy Cash McConochie, the Courtroom Deputy Clerk, by email . . . or telephone . . . to schedule a status conference. Similarly, if the parties do not believe the case is yet in an appropriate posture for any motion to be filed, they should contact Ms. McConochie to schedule a status conference." (Doc. 36 at 2 n.1.)  Neither party contacted Ms. McConochie in response.

*Prods., Inc.*, 530 U.S. 133, 150 (2000).  As this matter is before the Court on cross-motions for summary judgment, the Court clarifies the standard to be used in each case.  Where the moving party does not bear the burden of proof at trial, the "moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim [but] simply may . . . point[ ] out to the district court [ ] that there is an absence of evidence to support the non-moving party's case." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Alternatively, if the moving party that does not bear the burden of proof at trial "put[s] on evidence affirmatively negating the material fact" required for the non-movant to prove its case, "then the non-movant must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* at 1116.  However, where the movant *does* bear the burden of proof at trial, "it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Fitzpatrick*, 2 F.3d at 1115 (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).

If the moving party meets its initial burden, whatever that burden is, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-26 (1986).  The essential question is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## II.  BACKGROUND FACTS

No material facts are in dispute.  Defendant Prowant was employed by Fannie Mae in its Atlanta, Georgia office from July 2011 through May 2012. (Declaration of Leslie Arrington ¶ 3, Doc. 11-2.)  Defendant Mitchell-Johnson was employed in the same office from May 2011 through September 2012.  (*Id.*)

### A.    Underlying arbitration

On or about May 19, 2014, Defendants filed a demand for arbitration with JAMS, Inc. ("JAMS") on behalf of themselves and similarly situated individuals alleging that Fannie Mae violated the FLSA's overtime provisions.  (Declaration of C. Andrew Head ("1st Head Decl.") ¶ 3, Doc. 15-2.)  Defendants filed that demand pursuant to Fannie Mae's Dispute Resolution Policy ("DRP") (Arrington Decl. Ex. A, Doc. 11-3), which both Defendants signed.  The DRP reads, in pertinent part:

> 1.    Arbitration as Prerequisite to Lawsuit.
> If an employee[5] has a claim that is covered under Section 2 of this Policy, he or she must arbitrate the claim under this Policy before bringing suit on it in court.
>
> 2.    Claims Covered by the Policy.
> This Policy applies to all claims that an employee might make against Fannie Mae . . . involving a legally-protected right, that directly or indirectly relate to his or her employment or the termination of that employment [  ].

---

[5] Footnote in original text of the DRP: "As used in this Policy, the word 'employee' includes current or former Fannie Mae regular, term, and temporary employees (including paid interns). Independent contractors and third party contract employees are not covered by the policy."

[  ]

5.   <u>Rules and procedures.</u>

Arbitration will be conducted under the rules and procedures contained in the Policy, supplemented by J·A·M·S's Arbitration Rules and Procedures for Employment Disputes ("J·A·M·S's rules"). In the event of a conflict between J·A·M·S's rules and those contained in the Policy, the Policy will prevail.

[  ]

14.   <u>Rejection/Acceptance of the Award.</u>

The employee may, *within 30 calendar days of the date of Issuance of the Award*, reject it, in its entirety, by sending a completed "Rejection of Arbitration Award" form to J·A·M·S and C&E. If the employee rejects the Award, it will not become binding on the employee or the Company, and the employee may bring suit on the claim at his or her own expense. [  ]

[  ]

16.   <u>Interpretation and Governing Law.</u>

**The arbitrator will resolve all disputes over the interpretation and applicability of the Policy, and over the arbitrability of all matters presented under it.** This Policy is an agreement to arbitrate pursuant to the [Federal Arbitration Act ("FAA")]. The Policy will, in all respects, be interpreted, enforced, and governed under the FAA.

(*Id.* (emphasis added).) The DRP does not use the words "class," "collective action," or "representative action." (Plaintiff's Statement of Undisputed Material Facts ¶ 3, Doc. 11-1; DRP, Doc. 11-3). As such, the DRP does not expressly provide for class claims.

Defendant Claimants filed the demand for arbitration on May 19, 2014, the arbitration proceeded. On May 23, 2014, JAMS issued its Notice of Intent to Initiate Arbitration, with both Claimants included in a case styled "Mitchell-Johnson, Tamara, et al v. Federal National Mortgage Association." (Second Declaration of C. Andrew Head ("2d Head Decl.") ¶ 4, Doc. 31-1.) On August 19, 2014, outside the 14-day timeframe for filing an Answer under JAMS

Employment Rules 9(c) and 9(f), Fannie Mae filed its Answer.  (*Id.* ¶ 6.)  In its Answer, Fannie Mae did not challenge the arbitrator's jurisdiction to decide any or all issues of arbitrability or the specific question of class availability.  (*Id.*)

On August 28, 2014, the arbitrator "held a preliminary conference with counsel.  During that hearing, in discussing the scheduling of various matters including a motion for class certification [under both JAMS class procedures and 29 U.S.C. § 216(b)], counsel for [Fannie Mae] stated that [Fannie Mae] would want to take depositions of Claimants in connection with such motion."  (JAMS Preliminary Order No. 2 at 2, Doc. 38-4.)  The parties then briefed whether Fannie Mae should be permitted to take pre-certification depositions, and a hearing was held on the issue.  (*Id.* at 3.)  The arbitrator found a "legitimate need for limited depositions to allow a proper response" by Fannie Mae.  (*Id.* at 4.)  The arbitration record before the Court does not indicate that Fannie Mae objected in any way, up to this point, to the arbitrator deciding class availability.

On September 25, 2014, Defendants "filed their Motion for Clause Construction, along with other motions including their Motion for Conditional Certification of [a] collective action, and Motion for Class Certification under JAMS Class Procedures."  (Head Decl. ¶ 8.)  On October 24, 2014, Fannie Mae filed its response in opposition to Defendants' clause construction motion. (Lazerson Decl. ¶ 6, Doc. 12.)  Nowhere in its 30-page response contending that the DRP does not provide for class claims does Fannie Mae object to the arbitrator deciding the issue.  (*See* Doc. 31-2.)  On November 4, 2014, Fannie

Mae filed its opposition to Defendants' motion for conditional certification of a collective action.  (Lazerson Decl. ¶ 6, Doc. 12.)

The arbitrator set a hearing on clause construction (to hear argument on class availability) for November 14, 2014.  (Head Decl. ¶ 11.)  On November 14, the arbitrator reset the hearing for December 11, 2014.  (*Id.* ¶ 12.)

## B.    Federal court litigation

On November 25, 2014, before the rescheduled class availability hearing happened, Fannie Mae filed this action.  (*Id.* ¶ 13.)  In one of its briefs, Fannie Mae describes its decision to do so as follows:

> There is no support for Defendants' suggestion that Fannie Mae has acted improperly or otherwise engaged in "forum shopping."  Fannie Mae, at all times, opposed Defendants' attempt to arbitrate as a class/collective action and acted affirmatively to prevent the arbitrator from ruling on the issue of class-wide arbitration by bringing this Action in a prompt manner based upon developing case law, including *Garden Fresh* [*Rest. Corp. v. Moreno*, 231 Cal. App. 4th 678 (2014),] decided on November 17, 2014.

(Doc. 23 at 17 n.9.)   In other words, Fannie Mae, relying on non-binding precedent from the California Court of Appeals (and the Sixth Circuit[6]), asserted that the DRP entitled Fannie Mae to seek judicial determination on class availability rather than have the arbitrator decide that issue.

Wary of the potential for delay inherent in litigation, Defendants asked if Fannie Mae would agree to toll the statute of limitations on potential class

---

[6] The other case that Plaintiff initially relied upon for the proposition that it was appropriate to file this lawsuit is *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013).  That case was decided over one year before Plaintiff filed this action and cannot reasonably be considered "developing."

members' claims.  (Lazerson Decl. Ex. A at 2, Doc. 11-5.)  Fannie Mae responded

that it was willing to agree to either of the following two options:

- The tolling of the statute of limitations for any putative opt-in claimants to extend up to the time of the final resolution by the federal courts of the issue of whether the court or the arbitrator should decide whether the Dispute Resolution Policy permits class-wide arbitration <u>provided</u> that Claimants agree to stay the arbitration; or

- The tolling of the statute of limitations for any putative opt-in claimants to extend up to the time of a decision on conditional certification (if a decision is made that the DRP permits class-wide arbitration) <u>provided</u> that Claimants agree (1) to stay the arbitration; and (2) that the court should decide the issue of whether the Dispute Resolution Policy permits class-wide arbitration.

(Doc. 15-5 at 2.)  Defendants recognized that the first option "only offers to

protect the putative class through the first of the two decisions that would have to

be made before the putative class will receive notice - i.e., only though the

threshold determination of *who decides* [whether the agreement permits class

claims], but not through the date of the decision [on the *actual permissibility* of

class claims.]"  (*Id*. at 3 (emphasis added).)  The first option also may have

potentially required the Defendant Claimants to postpone arbitration through the

time this case might be decided on appeal.[7]  As a result, Defendants went with the

second option, subject to a host of fundamental limitations and conditions.

　　In the final email from Plaintiff to Defendants agreeing on the stipulation,

Plaintiff stated, in pertinent part, "[W]e have an agreement. [ ] Please forward us

---

[7] The first option refers to <u>final</u> resolution by the federal court<u>s</u>.

the draft stipulation for review." (*Id.* at 5.) However, no formal stipulation was ever entered in this case.

As far as the Court can tell, the content of the stipulation is as laid on in Defendants' counsel's email of December 01, 2014 at 1:59 PM Central Standard Time. Plaintiff offers evidence that it, too, believes that email to contain the stipulation. (*See* Declaration of Wendy M. Lazerson ¶ 6, Doc. 6 ("A true and correct copy of the email I received from Andy Head, counsel for Defendants, on December 1, 2014, setting forth terms to which the parties agreed is attached hereto as Exhibit B."); Doc. 6-2.) The relevant portion of the email reads:

> While Claimants do not agree that it was proper for Respondent to file this federal court action and cause this delay, in the interests of the Claimants and the putative opt-in class members and **without waiving any rights or objections arising out of Respondent's court filing, Claimants will agree to the following** which should provide Respondent with the relief it has demanded:
>
> 1. Tolling of the statute of limitations for any putative opt-in claimants to extend up to the time of a decision on conditional certification (if a decision is made that Claimants can proceed on their claims as a collective action; if a decision is made that the arbitration agreement did not allow for collective action treatment, through the date of that decision);
>
> 2. Claimants agree, and agree to inform the arbitrator today, that Claimants will not oppose Respondent's motion in federal court to stay the arbitration and for preliminary and permanent injunction barring the arbitrator from ruling on those issues, provided that Respondent files that motion to stay consistent with its statement that it will be filed tomorrow;
>
> 3. **Claimants will agree to a stipulation,** solely for the purposes of avoiding further delay in this case and **without admitting that Respondent's position is legally or factually correct, that**

**the court will decide all issues of arbitrability regarding which claims will or will not proceed in arbitration**;

4. A party's agreement to the tolling set forth in #1 above shall not have any determinative effect whatsoever on either party's arguments or opposition regarding Claimants' contention that the parties had previously reached one or more tolling agreements applicable to the putative class members in this case;

5. Any judgment or injunction obtained by Respondent due to Claimant's agreements and stipulation in #s 3-4 above shall not confer prevailing party status on Respondent, and shall not entitled Respondent to any award of attorney's fees or costs;

6. Claimants will accept service of process in the federal court action by timely execution of an acceptance of service of process or waiver of service; and

7. Respondent will file its motion(s) for expedited relief in the federal court action promptly, but no later than fourteen (14) days from today.

(Doc. 6-2 at 2-3; Doc. 15-5 at 5-6.)

Despite the fact that the stipulation, like the DRP, does not mention the words "class," "collective," or "representative," it is clear from the bargaining process for the stipulation, which is before the Court in the form of email chains, that class availability was intended to be one of the issues to be decided by the Court.[8]  (*See, e.g.*, Doc. 15-5 at 2 ("Fannie Mae is willing to agree to . . . [t]he tolling of the statute of limitations . . . provided that Claimants agree . . . that the court should decide the issue of whether the Dispute Resolution Policy permits class-wide arbitration.").)

---

[8] Ironically, the stipulation contains almost the exact same language as the DRP, which Fannie Mae argues is insufficient to delegate the question of class availability to the arbitrator.

After Plaintiff moved for summary judgment on the two claims left after the stipulation, *i.e.*, whether the DRP provides for class claims and whether Plaintiff is entitled to an injunction, Defendants filed two counterclaims alleging that Plaintiff's court filing rendered the DRP no longer enforceable. (Doc. 19 at 10-12.)   Defendants then moved for summary judgment on those two counterclaims.

## III.   DISCUSSION

For ease of reference, and because all of the relevant issues have now been fully briefed and prepared for resolution by the Court, the Parties' positions are as follows:

1. Fannie Mae

   a. The DRP does not permit Defendants to bring claims as a class because the DRP is silent as to class claims and collective actions.  The Court should consider, among other things, that the DRP: (1) consistently references procedures to be followed by a single employee pursuing a single claim; and (2) contains a provision providing a unilateral right to seek *de novo* action in court if the employee disagrees with the arbitrator's award.

   b. Fannie Mae did not waive arbitration by seeking judicial resolution of the narrow class availability issue.

c. It would be improper for the Court to reach Defendants' waiver and breach of contract claims because the parties' stipulation narrowed the issues before the Court and the Court is bound by those limits.

d. Even if the Court is not bound by the limits of the stipulation, Defendants waived, and are estopped from asserting, their breach of contract claims by virtue of their consent to the stipulation that the Court decide all issues of arbitrability.

2. Defendants

a. Class claims should be permitted under the DRP for three main reasons: (1) the definition of "employee" in a footnote in the DRP contains the plural form, "employees"; (2) the DRP defines covered claims to include those that "indirectly" relate to the claimant's employment; and (3) the DRP contains explicit lists of claims that cannot be brought under the DRP and those lists do not mention class or collective claims.

b. Fannie Mae waived arbitration by seeking judicial resolution of an issue that was clearly and unmistakably delegated to the arbitrator.

c. Fannie Mae materially breached the DRP when it initiated this action, and, as a result of that breach, Defendants are entitled to rescission of the DRP.[9]

---

[9] Defendants also claimed, as an alternative theory under Counterclaim 2, that Plaintiff's conduct in filing this court action demonstrated that the parties "had no meeting of the minds on the material terms of the DRP, and therefore, no enforceable contract for arbitration was

d.  The Court is not precluded from hearing Defendants' waiver and breach claims because the stipulation both: (i) contains a non-waiver provision; and (ii) stipulates only that the Court *shall* address arbitrability — and not that the Court *shall not* address any other issue.

## A.  The stipulation's effect on what is properly before the Court

Plaintiff argues the "parties' stipulation that the Court will decide whether the DRP permits class-wide arbitration is a binding agreement that permissibly narrows the issues before the Court." (Doc. 38 at 14.)  The plain language of the parties' stipulation does not support such a limited reading of the stipulation. (*See* Doc. 6-2 at 2-3; Doc. 15-5 at 5-6.)  Rather, the language of the stipulation shows the parties agreed for the Court to determine "all issues of arbitrability." (Doc. 6-2 at 3; Doc. 15-5 at 6.)

In addition, the stipulation in this case contains no limiting language providing that there is one and only one issue (*i.e.*, class availability) for the Court to decide.  Rather, the stipulation provides only that the Court should address "all issues of arbitrability" – as opposed to "only issues of arbitrability" or "all issues of class arbitrability and no others."  In other words, the list of items the parties stipulated that the Court should address is non-exclusive, which distinguishes the stipulation entered into in this case from the stipulation at issue in the only

---

formed and rescission is the appropriate remedy." (Doc. 19 at 11.)  However, Defendants did not brief this alternative theory in their Motion for Summary Judgment despite being directed to brief counterclaims 1 and 2.  (Doc. 36 at 2.)  As a result, the Court finds Defendants have abandoned this alternative theory and no longer explicitly contest formation of the arbitration agreement.

binding case cited by Plaintiff on this issue.  *See United States v. One 1978 Bell Jet Ranger Helicopter, Serial No. 2464, License No. N500RF*, 707 F.2d 461, 461-62 (11th Cir. 1983) (assessing the effect of a stipulation that read: "What the government disputes is Mr. Waldron's alleged prior knowledge that the signer of those notes, Mr. Fripp, was involved in narcotics activities . . . **that is the sole issue for this case**, whether Mr. Waldron had knowledge that Mr. Fripp was involved in unlawful activities at any time relevant to the signing of those notes. **That's the only issue**." (emphasis added)).

Moreover, the language of the stipulation shows that Defendants entered into it "without waiving any rights or objections arising out of [Fannie Mae's] court filing" and "without admitting that [Fannie Mae's] position is legally or factually correct."  (Doc. 15-5 at 6.)  The plain language of this part of the stipulation also demonstrates that the parties did not agree that the Court's review would be as limited in scope as Fannie Mae suggests.  Under the plain language of the stipulation, read as a whole, the Court may properly adjudicate — and Defendants are not estopped from asserting — objections to Fannie Mae's court filing, which include Plaintiff's waiver of the right to arbitrate by filing this court case and Plaintiff's material breach of the DRP by filing this court case.

Accordingly, Defendants' waiver and breach arguments are properly before the Court.  The Court now turns to those arguments.

## B.    Waiver

Defendants argue that by seeking a declaratory judgment from this Court on an issue that the DRP reserved for the arbitrator, Plaintiff waived its right to arbitration.  Plaintiff responds that it has not acted inconsistent with its right to arbitrate, nor have Defendants been prejudiced.

The Eleventh Circuit's test for when a party has waived its right to arbitrate is as follows:

> Although arbitration agreements governed by the FAA are to be liberally enforced, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L.Ed.2d 765 (1983), courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so, *see Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1365 (11th Cir. 1995) ("Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right."); *see also Burton–Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 407 (5th Cir. 1971) (explaining that an arbitration agreement, "just like any other contract . . . , may be waived").  To determine whether a party has waived its contractual right to arbitrate, courts apply a two-part test: "First, [they] decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, [they] look to see whether, by doing so, that party 'has in some way prejudiced the other party.' " *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).

*Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011) (footnotes omitted).

"There is no settled rule, however, as to what constitutes a waiver or abandonment of the arbitration agreement."  *Howard Hill, Inc. v. George A.*

*Fuller Co.*, 473 F.2d 217, 218 (5th Cir. 1973).[10]   Rather, "[w]hether waiver has occurred 'depends upon the facts of each case.'"   *Grigsby & Associates, Inc. v. M Sec. Inv.*, 635 F. App'x 728, 731 (11th Cir. 2015) (quoting *Burton–Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir.1971)).   As "federal policy strongly favors arbitration, the party who argues waiver 'bears a heavy burden of proof'" under the above two-part test.   *Krinsk*, 654 F.3d at 1200 n.17 (quoting *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam)).   "But 'the doctrine of waiver is not an empty shell.'"   *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Morewitz*, 62 F.3d at 1366).

The first part of the test asks if "under the totality of the circumstances," Fannie Mae "has acted inconsistently with the arbitration right."   *S & H Contractors*, 906 F.2d at 1514.   "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate."   *Morewitz*, 62 F.3d at 1366.   Put another way, "a party acts inconsistently with the arbitration right when the party 'substantially invokes the litigation machinery prior to demanding arbitration.'"   *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012) (quoting *S & H Contractors*, 906 F.2d at 1514).

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the  former Fifth Circuit rendered prior to the close of business on September 30, 1981.

However, as Plaintiff correctly argues, sometimes a defendant's delay in moving to compel arbitration is excused where there is no "protracted litigation" before it so moves. *Wilson v. Par Builders II, Inc.*, 879 F. Supp. 1187, 1189 (M.D. Fla. 1995).   In such a case, the litigation machinery may not have been "substantially" invoked as required under the test.   Indeed, invoking the litigation machinery is sometimes excused even when the party who seeks to compel arbitration is the one who filed the lawsuit in the first place — as long as the lawsuit was (or lawsuits were) "insubstantial."   *Grigsby* , 635 Fed. Appx. at 733 (filing of four "placeholder" lawsuits, which required only minimal time and resources on the part of the defendant, did not amount to a waiver of the right to arbitrate).   *See also Smith v. Pay-Fone Sys., Inc.*, 627 F. Supp. 121, 124 (N.D. Ga. 1985) (finding no waiver of the right to arbitrate where a party filed a lawsuit, dismissed it, and moved for arbitration, all within three months, during which time the defendants had not answered or made any motions on the merits but had merely moved to dismiss for lack of personal jurisdiction).

Here, no reasonable jury could conclude that Fannie Mae's invocation of the litigation machinery was insubstantial.   Fannie Mae did not merely wait to compel arbitration of a case in which it was named a defendant.   Fannie Mae affirmatively filed a federal court action when the dispute had already been proceeding before an arbitrator, without objection, for some six months and was about to go to final hearing on class availability.   Furthermore, Fannie Mae initially sought a Court injunction preventing the arbitrator from deciding an

issue that Fannie Mae had extensively briefed in arbitration and never once objected to the arbitrator deciding (prior to filing the lawsuit, of course).  Fannie Mae makes much of the parties' stipulation, but the stipulation did not exist when Fannie Mae unilaterally, abruptly, and without any basis in binding precedent moved this Court to decide an issue that the parties appeared to agree, up until then, was properly before the arbitrator.   Fannie Mae's reliance on the stipulation, which was extracted from Defendants based on Fannie Mae's "two options" on the eve of the arbitrator's class availability hearing, is therefore without merit.

Fannie Mae's filing of this case put Defendants between Scylla and Charybdis.  It is possible that Defendants may have had a way out of their jam other than by entering into the stipulation — *i.e.*, by seeking emergency relief from the Court or possibly the arbitrator.   Even so, Defendants' unexercised potential option does not diminish Fannie Mae's overarching responsibility for substantially invoking the litigation machinery by filing this case right in the heat of the parties' arbitration and proceeding as it has since then.

Fannie Mae argues, "[o]n its face, the undisputed purpose of Fannie Mae's declaratory judgment action is to continue to arbitrate within the permissible scope of the DRP."  (Doc. 38 at 17.)  Nonsense.  On its face, the undisputed purpose of Fannie Mae's declaratory judgment action was to arrest the arbitral process so the Court could issue: (1) a declaration stripping the arbitrator of the ability to decide whether the agreement provided for class claims; (2) a

declaration stripping Defendants of the ability to bring their claims as a class, which they obviously intended to do from the moment they demanded arbitration, and to which Fannie Mae never objected on the ground that the DRP did not authorize the arbitrator to decide class availability; and (3) an injunction preventing Defendants from bringing their claims as a class.  (*See* Compl.)

As Fannie Mae invoked the litigation machinery in this way, resulting in almost two years of litigation involving two summary judgment motions, multiple motions to file under seal, and protracted mediation before a Magistrate Judge, a reasonable jury could only conclude that this litigation has been substantial and that Fannie Mae, under the totality of the circumstances, "has acted inconsistently with the arbitration right."  *S & H Contractors*, 906 F.2d at 1514.

Under the second part of the test, Defendants must also show prejudice. "Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate."  *Morewitz*, 62 F.3d at 1366.   The arbitrator's clause construction award likely would have been issued soon after the December 11, 2014 hearing.   Instead, Defendants have had to suffer substantial delay and undertake significant litigation expenses in this Court.  It can even be said that "[b]y slowing the process and magnifying its costs, [Fannie Mae's filing and litigation of this case] undermined the purpose of the Federal Arbitration Act's 'liberal federal policy favoring arbitration agreements.'"  *In re Checking Account Overdraft Litig.*, 754 F.3d at 1296 (quoting *Moses H. Cone*

*Mem'l Hosp.*, 460 U.S. at 24).   This delay is particularly egregious under the specific circumstances of this arbitration agreement, as the DRP ultimately unusually authorized the employee Claimants <u>at the conclusion</u> of the arbitration to file suit *de novo* in federal court.   (*See* DRP ¶ 14.)   When a party chooses to arbitrate and is rebuffed in the manner evidenced here, the Court has "no trouble concluding that the delay and costs incurred by [Defendants] are prejudicial for the purpose of waiver analysis."   *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005) (finding waiver of the right to arbitrate where an employer did not respond in arbitration and refused to pay the arbitral fee as required under its own dispute resolution policy, then argued the court should compel arbitration after the plaintiff filed a complaint in federal court).   No reasonable jury could find otherwise.

Accordingly, Defendant's Motion for Summary Judgment on counterclaim 2, that Fannie Mae has waived its right to arbitrate, is **GRANTED**.

## C.    Breach of the DRP

Assuming *arguendo* that Fannie Mae did not waive its right to arbitrate, the Court also finds Defendants are entitled to judgment as a matter of law that Fannie Mae breached the DRP.

While waiver of arbitration is governed by federal law, breach of the arbitration agreement is governed by state law.   *Caley v. Gulfstream Aerospace*

*Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).[11]   The elements of a breach of contract claim in Georgia are: (1) a valid contract; (2) material breach of its terms; and (3) resultant damages to the party having the right to complain that the contract has been broken.  *See TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009); *TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc.*, 880 F. Supp. 1572, 1583 (N.D. Ga. 1995)).  Factors 1 and 3 are not at issue, as the parties appear to agree the contract is valid and the Court has already found, above, that Defendants have been prejudiced.  And Defendants' accrual of additional attorney's fees in connection with Plaintiff's filing of this Court action is undisputed.  The only question, therefore, is whether Fannie Mae materially breached the DRP.

Defendants allege that Fannie Mae breached the DRP when it asked the Court to decide a question — whether the DRP provides for class claims — that the parties had agreed, in the DRP, to delegate to the arbitrator.  Whether Fannie Mae breached the DRP therefore turns on whether the DRP permitted Fannie Mae to bring this case.  The Court finds, as a matter of law, it did not.  In order to understand why the DRP did not permit Plaintiff to ask the Court to decide class

---

[11] The DRP contains a governing law clause stating that the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA") applies to the interpretation and enforcement of the contract.  (Doc. 1-1 at 5.)  However, under the FAA, breach is determined under state law.  It is undisputed that the acts potentially giving rise to the contract at issue occurred in Georgia.  "Under the [Georgia] rule of *lex loci contractus*, the validity . . . of a contract [is] governed by the substantive law of the state where the contract was made."  *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006) (quoting *Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.*, 417 S.E.2d 671, 673 (Ga. Ct. App. 1992)) (internal citations omitted).  Accordingly, Georgia law governs the contract issue here.

availability, the Court provides some background on how gateway arbitration issues are classified and adjudicated.

The first question is: what type of gateway arbitration issue is class availability?  Under binding Eleventh Circuit and Supreme Court authority, there are only two options: procedural or substantive.  "[P]rocedural questions [are those] which grow out of the dispute and bear on its final disposition," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quotation and citation omitted), such as "allegation[s] of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Gateway procedural issues "are presumptively not for the judge, but for an arbitrator, to decide."  *Howsam*, 537 U.S. at 84.

Gateway substantive issues, on the other hand, are issues "for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). These are called "questions of arbitrability."  "Questions of arbitrability," as a term of art for a limited category of issues, applies only to:

> the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Howsam*, 537 U.S. at 83-84.  "[W]hether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a

certain type of controversy" are two examples of questions of arbitrability.  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).  And "if there is doubt about [whether the arbitrator should decide a certain issue,] we should resolve that doubt "'in favor of arbitration.'"  *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

The Supreme Court addressed whether class availability was a substantive or procedural gateway issue in *Bazzle*.  There, a plurality of the Court found it was procedural:

> The question here – whether the contracts forbid class arbitration-does not fall into this narrow [category of "questions of arbitrability."] It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. Unlike *First Options [of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)], the question is not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter. 514 U.S., at 942-945, 115 S.Ct. 1920. Rather the relevant question here is what kind of arbitration proceeding the parties agreed to. That question does not concern a state statute or judicial procedures, *cf. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide.

*Bazzle*, 539 U.S. at 452-53.

Subsequent Supreme Court decisions have explained that *Bazzle* did not decide the issue once and for all because it was a plurality decision.  *See, e.g.*, *Oxford Health Plans LLC v. Sutter*, --- U.S. ---, 133 S. Ct. 2064, 2068 n.2 (2013)

("*Stolt–Nielsen* [*S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)] made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability. *See* 559 U.S., at 680, 130 S.Ct. 1758. But this case gives us no opportunity to do so[.]").  The Eleventh Circuit also has not decided this issue directly.  *See S. Comm'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1358 n.6 (11th Cir. 2013).

However, that is not to say *Bazzle* is worthless.  *Au contraire.*  It may have been a plurality decision, but it's the best we've got.  Neither the Eleventh Circuit nor the Supreme Court has expressly rejected the proposition that class availability could be a gateway procedural issue, and the plurality in *Bazzle* found it is.  Of course, if class availability is a procedural issue, it was, as a matter of law, for the arbitrator to decide in this case.

Furthermore, even if class availability were a (substantive) question of arbitrability, the parties agreed that an arbitrator would decide that issue, too. The DRP provides that the "arbitrator will resolve all disputes over . . . the arbitrability of all matters presented under" the DRP, and it also incorporated the JAMS rules.  (DRP ¶¶ 5, 16.)  Both provisions are, either together or separately, clear and unmistakable evidence that the parties agreed to arbitrate questions of arbitrability.  *See AT & T Tech., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005).

This is precisely what the Eleventh Circuit found in *Southern Communications* based on less "clear and unmistakable" evidence of intent to arbitrate questions of arbitrability. There, the agreement did not specify, as it does here, that the "arbitrator will resolve all disputes over . . . arbitrability." Rather, the agreement incorporated an arbitration association's rules that permitted the arbitrator to decide arbitrability, and the company failed to object to the arbitrator's jurisdiction to do so. The Eleventh Circuit explained that this situation was sufficient to give the question of class availability to the arbitrator, no matter whether class availability is a procedural issue or a (substantive) question of arbitrability:

> Like the Supreme Court, we also have not decided whether the availability of class arbitration is a question of arbitrability. However, as in *Sutter*, this case does not give us the opportunity to consider the question, because here SouthernLINC gave the question of whether the contract allowed for class arbitration to the arbitrator through its choice of rules and by failing to "dispute th[e] [a]rbitrator's jurisdiction to decide this threshold issue."

720 F.3d at 1358 n.6.

Fannie Mae urges that the question of class availability is somehow different: essentially, that it is a substantive-PLUS question of arbitrability.[12] And because the question of class availability is so fundamentally important so as to be substantive-PLUS, the argument goes, it is not enough for an arbitration agreement to provide simply that "all issues of arbitrability are for the arbitrator." Instead, to "clearly and unmistakably" delegate class availability to an arbitrator,

---

[12] To be clear, "substantive-PLUS" is a moniker made up by the Court. The Court has no reason to believe the parties would object, however.

the agreement must provide specific language to that effect, for example, "all issues of arbitrability, including whether the agreement provides for class claims, shall be decided by the arbitrator." That is, according to Fannie Mae's argument, for a substantive-PLUS question of arbitrability such as class availability, silence about the specific issue is not enough to delegate it.

Fannie Mae cites only out-of-circuit precedent[13] for the proposition that there is such a thing as a substantive-PLUS question of arbitrability. Given the Eleventh Circuit's reasoning in *Southern Communications* block quoted above, it appears that substantive-PLUS questions of arbitrability do not exist under Eleventh Circuit precedent. And even though the Supreme Court has said that *Bazzle* is not binding, it has given no indication that it would do anything other than find class availability either a procedural or a substantive gateway issue. Under binding authority, then, class availability is either procedural or it is substantive, but it is not substantive-PLUS. Accordingly, regardless of whether class availability is procedural or substantive, if the arbitration agreement delegates <u>all</u> questions of arbitrability to the arbitrator, the issue is for the

---

[13] Plaintiff cites *Garden Fresh Restaurant Corporation v. Superior Court*, 231 Cal. App. 4th 678, 2014 WL 6306143 (Cal. Ct. App. 2014); *Opalinski v. Robert Half Intern. Inc.*, 761 F.3d 326 (3d Cir. 2014); and *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013). Other cases resolving the same issue include *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193 (5th Cir. 2016); *Dell Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016); *Wells Fargo Advisors, L.L.C. v. Tucker*, No. 15-CV-7722-VEC, 2016 WL 3670577, at *4 (S.D.N.Y. July 1, 2016); *Hedrick v. BNC Nat'l Bank*, No. 15-CV-9358-JAR, 2016 WL 2848920, at *5 (D. Kan. May 16, 2016); *Dent v. Encana Oil & Gas, Inc.*, No. 15-CV-01800-CMA, 2016 WL 3774192, at *3 (D. Colo. Feb. 17, 2016); *Rossi v. SCI Funeral Servs. of New York, Inc.*, No. 15-CV-473-ERKVMS, 2016 WL 524253, at *8 (E.D.N.Y. Jan. 28, 2016); *Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669-WHO, 2015 WL 4452111, at *8 (N.D. Cal. July 20, 2015); *Harrison v. Legal Helpers Debt Resolution, LLC*, No. 12-CV-2145-ADM/TNL, 2014 WL 4185814, at *5 (D. Minn. Aug. 22, 2014).

arbitrator, not the court.  That is true as a matter of law even where the agreement, as here, does not mention the specific arbitrability issue.[14]

The undisputed facts in this case show clear and unmistakable evidence that the parties agreed to arbitrate all issues of arbitrability, which is sufficient evidence that the parties delegated class availability to the arbitrator as a matter of law.  The fact that Fannie Mae so substantially participated in the arbitration of class availability is further evidence that it, too, understood that the question of class availability was properly before the arbitrator.

Accordingly, Plaintiff was not entitled under the DRP, as a matter of law, to file this declaratory judgment action.  To the extent class availability is found to be a (substantive) question of arbitrability, it was delegated to the arbitrator by agreement of the parties in the DRP.  When Plaintiff filed this case, then, it breached the DRP.  What came after that – and in particular, the stipulation – did not cure the breach.[15]  Rather, the stipulation is more appropriately viewed as

---

[14] After briefing on this issue was completed in this case, at least three district courts in this circuit have had occasion to address it.  In *Dirocco v. Victory Mktg. Agency, LLC*, No. 2:15-CV-552-FTM-99CM, 2016 WL 1266932 (M.D. Fla. Apr. 1, 2016), the court found class availability was a procedural issue under Eleventh Circuit and Supreme Court law.  In *JPay, Inc. v. Salim*, No. 1:16-CV-20107, Doc. 39 (S.D. Fla. May 24, 2016), the court found class availability was a (substantive) question of arbitrability and that the parties had clearly and unmistakably delegated the issue to the arbitrator when they agreed the arbitrator would decide "[t]he arbitrability of the dispute, claim or controversy[.]".  *Id.* at 8.  In other words, *Salim* found class availability was a run-of-the-mill question of arbitrability.  But in *JPay, Inc. v. Kobel*, No. 1:16-CV-20121, 2016 WL 2853537, at *4 (S.D. Fla. May 16, 2016), the court found class availability was a substantive-PLUS question of arbitrability and denied a motion to compel until it had a chance to rule on whether the agreement provided for class claims.  Both *Kobel* and *Salim* are currently on appeal.  *Dirocco* was not appealed.

[15] The Court also directed the Parties to brief the issue of "whether the parties entered into a modification of their arbitration agreement by virtue of adoption of the stipulation conditions and, if so, whether the existence of the modified arbitration agreement in effect moots [many of the] other issues the parties have raised in their motions and briefs before the Court . . . ."  (Doc.

Defendants' attempt to make lemonade, or at least to avoid getting pelted in the face by the lemons.

> Under Georgia law:
>
> Generally, one injured by a breach of a contract has the election to rescind or continue under the contract and recover damages for the breach. But to justify rescission, there must be a material nonperformance or breach by the opposing party. If the breach is not material, the party is limited to a claim for damages and cannot rescind the contract.
>
> A breach is material when it is so substantial and fundamental as to defeat the object of the contract. In other words, to trigger the right to rescission, the act failed to be performed must go to the root of the contract. A breach which is incidental and subordinate to the main purpose of the contract does not warrant termination.

*Vidalia Outdoor Prod., Inc. v. Higgins*, 701 S.E.2d 217, 219 (Ga. Ct. App. 2010) (quoting *Forsyth County v. Waterscape Svcs.*, 694 S.E.2d 102 (Ga. Ct. App. 2010)).

The object of the DRP was to arbitrate certain types of employment disputes efficiently and also still to unilaterally allow claimant employees a secondary right to *de novo* litigation of their claims in federal court post-arbitration. (*See* DRP ¶ 14.)  Defendants' underlying FLSA claims are covered by the DRP.  Yet, Fannie Mae filed this Court case after the arbitrator was already some six months into the process of deciding the parties' dispute.  The imminently foreseeable result has occurred: years of litigation when the arbitration would likely be long over.  The Court therefore **GRANTS** Defendants'

---

40 at 2.)  Having considered the Parties' responses, (Docs. 41, 42), both of which contend the DRP was not modified, the Court finds no modification occurred.

Motion for Summary Judgment based on breach of contract as well.  Defendants' request to rescind the DRP based on Fannie Mae's material breach is also **GRANTED**.

## IV.   CONCLUSION

Defendants' Motion for Summary Judgment [Doc. 37] is **GRANTED**.  By filing this court case and substantially invoking the litigation machinery, Fannie Mae waived its right to arbitration and materially breached the DRP. Accordingly, the DRP is both waived and rescinded, and this case shall proceed in federal court.   Fannie Mae's Motion for Summary Judgment seeking a declaration and injunction based on the now extinguished DRP [Doc. 11] is **DENIED as MOOT**.

Defendants' Counterclaim 3 is the only claim left in this case.  It is Defendants' underlying FLSA claim.  The Clerk is **DIRECTED** to recaption the case by switching the parties: Prowant and Mitchell-Johnson are now the Plaintiffs, and Fannie Mae is now the Defendant.

Prowant and Mitchell-Johnson are **DIRECTED** to file, within 14 days of the date of this Order, an Amended Complaint containing a full statement of their FLSA claims.

**IT IS SO ORDERED** this 21st day of September, 2016.

_____
**Amy Totenberg**
**United States District Judge**